18892

Corrie Lei HAVIRD and Eleanor Havird Carter, Appellants, v. Isadore SCHISSELL, as Executor of the Last Will and Testament of Lee E. HAVIRD, Respondent.

(166 S. E. (2d) 801)

Messrs. *Ryan C. Shealy,* of Cayce, and *Callison & Spence,* of West Columbia, *for Appellant,*

Messrs. *Harley & Parr,* of Newberry, *for Respondent,*

*Messrs. Ryan C. Shealy,* of Cayce, and *Callison & Spence,* of West Columbia, *for Appellants, in Reply,* 

March 17, 1969.

*Per Curiam:*

This is the second case to reach us on appeal involving the estate of Lee E. Havird, late of Newberry County. See *Havird v. Schissell,* S. C., 162 S. E. (2d) 877 (1968). The transcript of record does not contain all of the proceedings below, only excerpts from the testimony being included. The facts, however, are essentially as follows.

Lee E. Havird was a bachelor who, however, had two or more illegitimate children, who went by the name of Tribble. At least one of his illegitimate children, John Frank Tribble, he recognized as his son. Inferentially, he also recognized Thornal Lee Tribble as a son. The appellant Corrie Lei Havird is the sole surviving sister of Lee E. Havird. The relationship of Eleanor Havird Carter does not appear. Isadore Schissell, the respondent-executor, was a long time friend of Mr. Havird, but no relation.

Lee E. Havird, on the 18th day of February, 1965, executed his last will and testament, and on the same day was taken to a hospital in Augusta, Georgia, where he remained until his death on March 15, 1965. His will bequeathed to Isadore Schissell, the named executor, the sum of $2,500.00 in lieu of commissions, and further provided that should the executor be called upon to defend any action brought to set aside the will, he was specifically authorized to employ counsel and to compensate such counsel out of the assets of the estate. The will also provided for extra compensation

for the executor for extra services in upholding the will in the event of a contest. The will then devised testator's store building and the lot on which it was situated to Thornal Lee Tribble. All the rest and residue of the estate was devised and bequeathed one-third to John Frank Tribble "outright and absolutely", and the other two-thirds to him as trustee for two named minor children of the said John Frank Tribble. The amount of the estate does not appear, but it is at least inferentially of substantial value.

The will in question was proved in due form of law and admitted to probate in solemn form after an extended hearing in the Probate Court. Upon appeal, a trial *de novo* was had before the Honorable C. B. Littlejohn and a jury at the December, 1965, term of the Court of Common Pleas. At the beginning of the trial three questions were framed for determination by the jury, apparently without objection. They were as follows:

a. Was the instrument the will as executed by the Testator and was it executed in accordance with the statute?

b. Was the making and signing of the will the product of undue influence exerted upon the deceased?

c. Did the deceased possess sufficient mental capacity to execute the will?

Upon the testimony being concluded, a verdict in the affirmative was directed by the court as to question a. As to question b, the court directed a verdict in the negative, and only question c was submitted to the jury, which found as a fact that the testator possessed the requisite mental capacity. A motion for a new trial was thereafter made by the appellants and denied, and the appeal is from the order denying such. There is no appeal from the direction of a verdict as to the question first stated, but it is urged that the court erred in directing a verdict as to question b.

> It is the settled law of this state that when the formal execution of a will is admitted or proved, a *prima facie* case in favor of the will is made out, and that,

as a general rule, the burden is then on the contestants to prove undue influence, incapacity or other basis of invalidation, and such burden remains upon the contestants throughout. In determing whether the contestants sustained such burden, the evidence has to be viewed in the light most favorable to the contestants. We, accordingly, proceed to review, in that light, the evidence relied upon by the contestants to prove that the will was a product of undue influence.

That Mr. Havird was physically unwell at the time the will was executed is not disputed. The evidence as to his mental condition is in conflict and susceptible of more than one reasonable inference. A nurse who was in attendance upon Mr. Harvrid while in the hospital in Augusta testified that he was irrational at times, but her testimony does not show just how near in point of time to the date of the execution of the will Mr. Havird was irrational. She also testified that a psychiatrist was called in, but she did not identify him, and he was not called as a witness.

The only evidence tending to prove mental incapacity of Mr. Havird on the date the will was executed, or immediately prior thereto, was the testimony of a Mrs. Scurry. She testified that she had occasion to see and talk with Mr. Havird, apparently on several occasions, shortly before he executed the will and was taken to the hospital; that he was at times irrational and expressed the view that people were trying to cheat him, rob him, and poison him.

Appellants contend that undue influence was exerted upon Mr. Havird by John Frank Tribble while Mr. Havird was in a weakened mental and physical condition, and that the will was the product of such undue influence. The evidence in the record on behalf of the respondent, affirmatively shows that John Frank Tribble had nothing whatever to do with either the preparation or execution of the will, and that he, in fact, did not know the contents of the will until after the death of Mr. Havird. No evidence to the contrary was tendered by appellants. The said Tribble visited his

father approximately three times a day during some period of time (just when or for how long does not appear), and on occasions did some minor errands for him, but the record does not contain any evidence to the effect that Tribble enjoyed a confidential or fiduciary relationship with his father as to any business, property or financial affairs of the father. He did on one occasion take a deposit to the bank.

Strongly relied upon by appellants to prove undue influence is the testimony of Dr. W. L. Mills, who was called as a witness by the respondent. On the day the will was executed, Mr. Havird was taken, apparently by John Frank Tribble and the appellant Corrie Lei Havird, to the office of Dr. Mills who had never seen him before. Miss Havird thought that Mr. Havird's physical condition was serious enough that he should be in the hospital, and Dr. Mills agreed and brought about his admission. Dr. Mills testified that Mr. Havird objected in a stubborn way and that it seemed he would listen to Tribble more than any one else. He, therefore, asked Miss Havird to step out of the office and just let Tribble talk with Mr. Havird a little bit because it seemed like he wanted to listen to Tribble. In brief summation, the testimony of Dr. Mills was to the effect that Tribble persuaded Mr. Havird that he should go to the hospital and that Tribble experienced no great difficulty in so persuading him. The testimony of Dr. Mills tends to prove, of course, a warm relationship between father and son and that the father was willing to listen to the advice of the son as to what was in the best interest of the physical health and medical care of the father. His testimony taken either alone, or in conjunction with all other circumstances, reflected by the record, is insufficient, we think, to prove that Tribble exerted any influence over his father with respect to the execution or contents of the will.

Undue influence may be proved by circumstantial evidence, "(B)ut the circumstances relied on to show it must be such as taken together point unmistakably

and convincingly to the fact that the mind of the testator was subjected to that of some other person, so that the will is that of the latter and not of the former." *Smith v. Whetstone,* 209 S. C. 78, 39 S. E. (2d) 127 (1946). In the instant case we have carefully reviewed, in the light most favorable to the appellants, all of the circumstances relied upon to show undue influence and conclude that the evidence was insufficient to raise a jury issue. It follows that there was no error in directing a verdict on the question of undue influence.

The remaining exceptions and contentions of the appellants are properly considered in the light of the single issue submitted to the jury and determined adversely to the appellants. Appellants contend that the trial judge erred in admitting over objection incompetent testimony of communications and transactions with the deceased, in violation of Code Section 26-402, commonly known as the Deadman's Statute. Objection on such ground was interposed to certain testimony of John Frank Tribble, Isadore Schissell, and Messrs. Harley and Parr, who are attorneys of record for the respondent in this proceeding. We shall first consider the objections to the testimony of the two attorneys.

Mr. Parr prepared the will, based on instructions brought to him by Schissell from Mr. Havird. After the will was prepared, Mr. Parr accompanied by Mr. Harley, Mr. Schissell and another witness went to the store of Mr. Havird where the will was executed in a back room. At the time the will was executed, only the testator and the three witnesses to the will, Messrs. Harley, Parr and a Mr. Higgins who had accompanied them, apparently for such purpose, were present. Most of the testimony of the two attorneys was addressed to an issue which is no longer involved in this case, there having been no appeal from the direction of a verdict to the effect that the will in question was executed by the testator in accordance with the requirements of the statute. Other testimony of the attorneys was addressed, however, to the question of the competence of the testator and certain

other details attending the preparation and execution of the will. Appellants contend that all of the testimony should have been excluded because they were parties whose interest would be affected by the result of the case. The basis of this contention is that the will empowered the executor to employ and compensate counsel of his choice to defend any contest of the will. The attorneys employed by the executor were not named in the will. The record does not disclose what, if any, arrangement or agreement had been made by the executor with the attorneys as to their compensation.

As far as we are able to ascertain, this court has not previously had occasion to consider just what circumstances would, or would not, disqualify an attorney as a witness under the provisions of Sec. 26-402. There are, however, available guiding principles. A witness is disqualified only when he has a legal or equitable interest and there is a possibility that such interest may be affected by the direct, legal operation and effect of the judgment. *Riddle v. George,* 181 S. C. 360, 187 S. E. 524 (1936); *McLauchlin v. Gressette,* 224 S. C. 296, 79 S. E. (2d) 149 (1953). In *Ex parte Miller,* 192 S. C. 164, 5 S. E. (2d) 865 (1939), the following general proposition is stated,

"It is the conceded law in this State that it is duty of one named as executor in a writing testamentary to propound the instrument for probate, and where an attack is made upon such instrument of writing, it is the executor's duty to uphold the Will; and attorney's fees incurred in his attempt to do so are a charge upon the estate, without regard to success."

The attorneys being entitled to reasonable compensation, in any event, there is nothing in the record before us to indicate that any interest on the part of the attorneys would be affected by the judgment in the case. The general rule of law in other jurisdictions seems to be that under statutes similar to ours an attorney is not deemed to have a disqualifying interest in the action by reason of his right to ordinary and usual fees which he will derive

from the proceeding, or by reason of a lien for his fee. 58 Am. Jur. 190, Witnesses, Sec. 312; 116 A. L. R. 1324. There is some authority for the proposition that a valid agreement for a contingent fee to be paid out of the proceeds recovered will give the attorney an interest which disqualifies him under the statute. We need not consider the latter proposition because here the record fails to disclose any such agreement.

For the reasons stated we conclude that there was no prejudicial error in the admission of the objected to testimony of the attorneys. We think it not amiss, however, to call to the attention of counsel and the bar generally the provisions of the 19th Canon of Professional Ethics, Supreme Court Rule 32, which reads as follows:

"Appearance of lawyer as witness for his client.

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in Court in behalf of his client."

We do not mean to be unduly critical of counsel, but do suggest that strict adherence to both the letter and the spirit of the foregoing Canon should have indicated to counsel that they should either restrict their testimony to merely formal matters, or else refrain from participation in the litigation if they deemed their testimony as to other matters essential to the protection of their client's interest.

We next consider the testimony of Isadore Schissell, the executor, who, in the absence of having renounced the benefits flowing to him under the will, was disqualified to testify as to any material transaction or communication had by him with the decedent. *Long v. Conroy,* 246 S. C. 225, 143 S. E. (2d) 459 (1965); *McLaurin v. Newton,* 183 S. C. 379, 191 S. E. 59 (1937); *Devereux v. McCrady,* 46 S. C. 133, 24 S. E. 77 (1896). Schissell

was present at the store but not in the room with testator when he executed the will. He entered the room shortly after the execution thereof, and the only testimony by Schissell as to a communication or transaction with the deceased, admitted over objection of the appellants, was,

"Q. Was the sealed envelope handed to you either by Mr. Havird or in the presence of Mr. Havird?

"A. Yes, he gave it to me immediately after he signed it and requested that I put it in my safe."

It is obvious that the foregoing question and answer were addressed primarily to the identity and authenticity of the document under contest, a matter no longer in issue. It is true that the answer given by Mr. Schissell may have had some remote probative value with respect to the mental competency of the testator. The objection, however, made no point thereabout and Schissell, without objection on the part of the appellants, testified at length as to the competency of the testator. There is an annotation in 146 A. L. R., commencing at page 250, dealing with the testimony of an incompetent witness as to statements or acts of deceased offered to show the mental condition of the deceased. At page 268 of said annotation we find the following,

"The majority doctrine is that notwithstanding the testimony of an interested witness may generally fall within the inhibition of the statute as to evidence of transactions or communications with a decedent, he may testify to the acts, demeanor, or conduct of the decedent where the testimony is offered merely for its bearing on an issue of mental competency."

We think there was no prejudicial error in the admission of the testimony of Schissell objected to by appellants and we proceed to consider the testimony of John Frank Tribble, admitted over objection.

Tribble was, of course, disqualified to testify as to any relevant, material transaction or communication with the deceased. The only testimony of Tribble,

admitted over objection, which even remotely involves a pertinent communication or transaction between Tribble and the decedent arises out of the following. He was about the front of the store when the attorneys came there for the purpose of the execution of the will, but was not at any time in the room where the will was executed. With respect to the arrival of these parties at the store, counsel asked Tribble whether, upon their arrival, Mr. Havird was expecting them, to which Tribble replied, "Yes, sir." The answer given by Tribble, of necessity, implies some prior communication between Tribble and the decedent, but he did not attempt to relate what the communication was. We cannot conceive of how a communication by the decedent to the effect that he was, for some undisclosed reason, expecting the parties who actually arrived, would have any pertinence to or bearing upon any of the issues then involved or still involved in the cause. We conclude that there was no prejudicial error.

In considering all of the appellants' contentions based on Code Sec. 26-406, we have borne in mind the prior holdings of this court to the effect that such Code Section is to be strictly construed and its restriction is not to be extended beyond its clearly expressed purpose. See *Harris v. Berry*, 231 S. C. 201, 98 S. E. (2d) 251, (1957), and the cases therein cited. To uphold the contentions of the appellants in this case would be, we think, to extend the statute beyond its clearly expressed purpose.

Finally, it is urged that the trial judge erred in refusing to charge the jury on the question of monomania, it being contended that the evidence warranted a finding that the testator was so afflicted and that the will was the result of such illness. Monomania is more frequently described as an insane delusion. In the case of *In re Washington's Estate*, 212 S. C. 379, 46 S. E. (2d) 287 (1948), it was recognized that there is considerable authority elsewhere recognizing and giving effect to the doctrine of insane delusion as a

separate and distinct element in the law of testamentary capacity. The court, however, expressly declined to follow the doctrine under the facts and circumstances of that case, for the reasons stated in the opinion, and it was held that there was no error in refusing a charge based on the insane delusion doctrine. It is neither pertinent nor necessary for us to decide in this case whether we would be precluded by the decision in the *Washington* case, under the doctrine of *stare decisis* from applying the insane delusion doctrine in an appropriate case.

The doctrine under discussion is dealt with at some length in 57 Am. Jur., commencing at page 90, Wills, Secs. 80, *et seq.;* 94 C. J. S. Wills § 18, p. 708 and 175 A. L. R. 882. In brief, the doctrine is to the effect that the will of a person who is otherwise possessed of testamentary capacity may be defeated upon proof that the testator was, at the time, suffering from an insane delusion and that the will was, in effect, the product of such insane delusion. The many courts which have considered the doctrine have apparently experienced some difficulty in defining precisely what constitutes an insane delusion. Such has rather generally been defined as "A belief in a state of facts that does not exist and which no rational person would believe to exist." Even if we assume the validity of the doctrine contended for, a review of the authorities on the subject would clearly indicate that the facts proved in the instant case would not have entitled the appellants to the requested charge. The contention that the testator was suffering from monomania or an insane delusion is predicated upon the testimony of Mrs. Scurry to the effect that testator expressed the belief that various people were trying to cheat him, rob him, and wanted to poison him. The record is almost completely devoid, however, of any facts or circumstances bearing upon the absence or presence of any factual or reasonable basis for his professed beliefs and fears. The record before us contains no evidence that his fears or beliefs were addressed toward his heirs at law, the appellants

in this proceeding. We do not think there was any evidence to give rise to a reasonable inference that his will or the contents thereof were the product or offspring of any delusions which the testator may have had. He was a bachelor, obviously fond of at least some of his illegitimate descendants. There is nothing in the record to indicate that his provision for them was, under the circumstances, an unnatural or illogical disposition of his property.

We conclude that the exceptions of the appellants are without merit, and the judgment of the lower court, is accordingly,

Affirmed.

LITTLEJOHN, J., disqualified.