2422

UNITED STATES FIRE INSURANCE COMPANY, Respondent v. Charles B. MACLOSKIE, Temporary Administrator of the Estate of Morris Middleton, Deceased; and Tamer J. Middleton, Personal Representative of the Estate of Frederick Middleton, Deceased, of whom Tamer J. Middleton, Personal Representative of the Estate of Frederick Middleton, Deceased, is Appellant.

(465 S.E. (2d) 759)

Court of Appeals

---

[21] *See* S.C. Code Ann. § 33-41-540; 59A Am. Jur. (2d) *Partnership* §§ 443 and 449 (1987).

*James H. Moss* and *H. Fred Kuhn, Jr.*, both of *Moss & Kuhn,* Beaufort, *for Appellant.*

*Charles E. Hill,* of *Turner, Padgett, Graham & Laney,* Columbia, *for respondent.*

Submitted Oct. 3, 1995

Decided Nov. 27, 1995; Reh. Den. Jan. 25, 1996.

HOWELL, Chief Judge:

United States Fire Insurance Company (United) filed this declaratory judgment action, which arose out of a tragic one-car accident which killed both occupants. The passenger's estate filed a wrongful death claim against both the driver's estate and his employer. Pending that suit, the employer's liability carrier, United, brought the present action, seeking a judicial determination of: (1) whether the driver was a covered insured under the policy; and (2) whether the carrier was obligated to defend the driver's estate in the wrongful death suit. From an unfavorable judgment, passenger's estate appeals.

## I. FACTS

Barry Bennet (Bennet) owns and operates Pedaling Pelican Bike Rentals, Inc. (Pelican), located on Hilton Head Island. Morris Middleton (Morris), an employee, borrowed a company truck on Friday, May 29, 1992, so he would have transportation to work the following morning. Morris left work between 5:00 and 6:00 p.m., driving a 1986 Toyota pickup truck owned by Pelican and insured by United.

Morris arrived at his aunt's (Tamer Middleton, Appellant) and uncle's home on St. Helena Island at approximately 7:00 p.m. Morris and his cousin, Frederick Middleton (hereinafter "Frederick," also the truck passenger, Appellant's son and decedent), left together sometime after 8:00 p.m. in Pelican's truck.

Morris's and Frederick's whereabouts thereafter until 10:30 p.m. are unclear. One witness, Frederick's brother Benjamin, testified he saw the Pelican truck that night parked outside a "little club" on Highway 21. At 10:30 p.m., Morris and Frederick were involved in a single-car accident while heading east on U.S. Highway 21. Frederick was dead when the highway patrol arrived and Morris was dead on arrival at the hospital. Blood alcohol analysis revealed Morris's blood alcohol level at .124%.

## II. STANDARD OF REVIEW

A declaratory judgment action to determine the coverage under an insurance policy's omnibus clause is an action at law. *Felts v. Richland County*, 299 S.C. 214, 383 S.E. (2d) 261 (Ct. App. 1989) (characterization of declaratory judgment suit depends on nature of underlying controversy), *aff'd*, 303 S.C. 354, 400 S.E. (2d) 781 (1991); *Allstate Ins. Co. v. Federated Mut. Implement & Hardware Ins. Co.*, 251 S.C. 203, 161 S.E. (2d) 240 (1968) (issue of liability under omnibus clause of an auto insurance policy is an action of law). In an action at law tried without a jury, findings of fact made by the trial court have the same force and effect as those of a jury; that is, the court's findings will not be disturbed on appeal unless without evidence which reasonably supports the judge's findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

## III. DISCUSSION

Appellant has the burden to show that Morris was covered within the confines of Bennett's permission. *See Liberty Mut. Ins. Co. v. Edwards*, 294 S.C. 368, 364 S.E. (2d) 750 (1988) (the burden is on the party seeking coverage to establish that permission was given by the named insured). This analysis requires determining the scope of permission granted, and whether the scope of the permissive use was exceeded.

The trial court found that Morris's permissive use of Pelican's truck was limited to driving it directly home, parking it, and driving it back to work the next morning; he was not to use the truck for his personal use. Appellant attacks this finding on three interrelated grounds: (1) incompetency of certain United witnesses to testify under the Dead Man's Statute, S.C. Code Ann. § 19-11-20 (1985); (2) improperly admitted hearsay statements; and (3) insufficiency of the evidence.

Appellant asserts that under the Dead Man's Statute, S.C. Code Ann. § 19-11-20 (1985), Bennett and two employees, Steven Moore and Mary Steuber, were all incompetent to testify concerning conversations Morris had regarding the scope of and restrictions on Bennett's grant of permission. Because this statute is an exception to the general rule of witness competency, it requires a restrictive reading, which the party requesting its muzzling effect bears the bur-

den on. *See Havird v. Schissell*, 252 S.C. 404, 166 S.E. (2d) 801 (1969); James F. Dreher and W.M. Von Zheren, *A Guide to Evidence Law in South Carolina*, 21-22 (S.C. Bar, 2nd ed. 1987). Of the four classes of witnesses disqualified, the relevant class here is "a person having an interest which may be affected by the event of the trial." *Long v. Conroy*, 246 S.C. 225, 232, 143 S.E. (2d) 459, 462 (1965). The test is whether the witness has a certain or vested legal or equitable interest, and the interest may possibly be affected by the direct, legal operation of the judgment. *Id.*

Appellant has failed to meet her burden. Bennett, doing business as Pelican, is the named insured under the subject insurance policy and there is no evidence United has challenged Bennett's coverage under the policy. The policy provides coverage for Bennett and any person using a covered vehicle with his permission. Whether United prevailed in its efforts to deny coverage to Morris Middleton cannot be said to affect its existing duty to perform its contractual obligations to Bennett. Thus, Bennett did not stand to gain or lose by the direct legal operation and effect of the judgment in this action. *See Long,* 246 S.C. at 234, 143 S.E. (2d) at 463 (regarding disqualification under the Dead Man's Statute, the test of the interest of a witness is whether he stands to gain or lose by the direct legal operation and effect of the judgment). Accordingly, we hold the trial court correctly concluded Bennett has not "interest" in the outcome of the instant action within the meaning of the Dead Man's Statute.

The trial judge also properly ruled that Bennett's two employees, Moore and Steuber, should not be disqualified. Appellant failed to define either their particular interests at issue, or the potential impact their testimony or the judgment may have on such interests. Standing alone, their status as Bennett's employees is insufficient to bring them within the limited orbit of the Dean Man's Statute. *Kean v. Landrum*, 72 S.C. 556, 52 S.E. 421 (1905) ("[A]n agent is no doubt usually partial to his principal, but he is not legally interested in the suit of his principal in the sense that his testimony as to the transactions or communications with deceased persons is rendered incompetent under [the Dead Man's Statute].").

■ Appellant also raises hearsay issues concerning two conversations on the limited permission granted Morris. The first conversation was between Bennett and Morris, which Steven Moore overheard. Morris's statements were nor offered to prove the truth of the matter asserted, but to show Morris's state of mind or plan or using the truck by his acceptance of the instructions. *See e.g. Ervin v. Myrtle Grove Plantation*, 206 S.C. 41, 32 S.E. (2d) 877 (1945) (pretrip assertions). Bennett's statements could properly be admitted as a state of mind exception to the hearsay rule. *See Winburn v. Minnesota Mut. Life Ins.*, 261 S.C. 568, 201 S.E. (2d) 372 (1973) (the hearsay rule does not apply to an out-of-court statement offered to prove state of mind). Similarly, statements Morris made to Mary Steuber in the second conversation at issue were also properly admitted to show Morris's planned use of the truck.

Therefore, because the trial judge properly found the three witnesses to be competent, and the admission of their testimony not violative of the hearsay rule, his findings on Morris's narrow scope of permission were well supported by the evidence.[1] Bennett specifically instructed Morris to drive the truck directly home and directly back to work the next day. Bennett further questioned Morris regarding whether he planned to take the truck out "partying" or "to drink" and Middleton assured him he would not do so. Steven Moore overheard the conversation and corroborated Bennett's account. Also, before giving Morris the keys, Mary Steuber asked him whether he "knew the rules" regarding driving company vehicles and he replied he was to "take the truck home, park it, and drive it back the next day."

■ Appellant also alleges error with the lower court's findings that Morris deviated or substantially deviated from the permissive use of Pelican's vehicle. First, she alleges that the evidence supports her view that Morris was still en route to his "home" when the accident occurred. Sec-

---

[1]Appellant refers to pertinent precedents and evidence suggesting a broader scope of permission. This view is not meritless, but because the lower court relied on ample and properly admitted evidence in reaching its contrary conclusion, we will not usurp the trial judge's role and weigh the evidence ourselves. *See Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976) (the trial judge's findings will not be disturbed on appeal unless without evidentiary support).

ond, Appellant invites this Court to greatly expand the well-established standard by which a permittee may deviate from the scope of permission granted but still be covered under an omnibus clause.

Under these facts and circumstances, Appellant overstates the import of whether Morris's "home" was with his grandfather or his aunt and uncle. At first blush these two factual distinctions are significant: If Morris's home was with his grandfather as Appellant contends, then he did not reach home by the time of the accident; conversely, if his home was with his aunt and uncle, as the trial judge found, then he went home and back out again. There is sufficient evidence to support both views. Therefore, the trial judge's finding that Morris's home was with his aunt and uncle was not erroneous and must be sustained. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

Morris left work between 5:00 and 6:00 p.m. and the accident occurred at approximately 10:30 p.m. Appellant offered no evidence why this 1½ hour commute required 4-5 hours that evening. Nor did Appellant offer evidence why Morris went to St. Helena Island (regardless of whether his home was at his grandfather's or his aunt's and uncle's), and then left St. Helena Island and drove approximately ten miles in a direction back toward Beaufort. Thus, the trial judge correctly ruled Morris's use of the vehicle at the time of the accident was not a minor deviation, nor detour, but "a substantial departure from the scope of permission granted by Barry Bennett."

To justify Morris's substantial departure from Bennett's permission, Appellant urges that we liberalize the standard for determining how far a permittee may deviate from the grant of permission and still be covered. Both parties correctly point out that differing approaches are commonly pigeonholed into three general categories: (1) the "hell or high water" rule where once the initial permission is given by an authorized insured, the permittee is covered, regardless of how grossly he or she violated the terms of the permission granted; (2) the "minor deviation" rule, in which material deviations from the scope of permission are not covered, but slight deviations from the intended use are; and (3) the conversion rule, in which the vehicle must be used within the scope of the permission granted. *See* Appelman, *Insurance*

*Law and Practice,* §§ 4366-68 (West 1979). We accept both parties' positions that South Carolina employs the third approach, the conversion or strict construction rule. *See, e.g., Rakestraw v. Allstate Ins. Co.,* 238 S.C. 217, 119 S.E. (2d) 746 (1961) (before a permissive user of the vehicle is covered, permission must be expressly or impliedly given for that use). However, we decline Appellant's invitation to liberalize the rule for two reasons. First, this Court has no authority to overrule Supreme Court precedent. *American Fast Print Limited v. Design Prints of Hickory,* 288 S.C. 46, 339 S.E. (2d) 516 (Ct. App. 1986). Second, courts will not extend terms of insurance contracts beyond their plain meaning, nor require coverage for permissive use which was either not contemplated or was expressly prohibited by the named insured. *Rakestraw v. Allstate Ins. Co.,* 238 S.C. 217, 119 S.E. (2d) 746 (1961).

Appellant further contends the trial court erred in finding Middleton was afforded no coverage under the United policy. In making this argument, Appellant appears to anticipate a claim for uninsured motorist coverage. However, the issue of uninsured motorist coverage was not brought before the trial court and was not addressed by the court in either its original order or its order on reconsideration. As such, the issue is not properly before us on appeal. *Pelican Bldg. Ctrs. of Horry-Georgetown, Inc. v. Dutton,* 311 S.C. 56, 427 S.E. (2d) 673 (1993) (where an issue is neither raised nor ruled upon by the trial court, and is not raised in a posttrial motion, the issue is not preserved for appellate review).

For the foregoing reasons, the decisions of the trial court is

Affirmed.

SHAW and CONNOR, JJ., concur.