518 S.E.2d 291

CATAWBA INSURANCE CO., Respondent,

v.

Betty SMITH, as personal representative of the Estate of Thomas
Lee Smith, Jr., Artricia Brown, as personal representative of
the Estate of Kelvin Jermain Brown, Linda Prince and Nation-
wide Insurance Co., Defendants,

of whom Betty Smith, as personal representative of the
Estate of Thomas Lee Smith, Jr., is Respondent,

and of whom Nationwide Mutual Insurance Co., is Appellant.

No. 2996.

Court of Appeals of South Carolina.

Heard March 10, 1999.

Decided May 24, 1999.

34

J.R. Murphy, of Murphy & Grantland, of Columbia, for appellant.

William P. Davis, of Baker, Barwick, Ravenel & Bender, of Columbia; and Charles C. Mayers, of Augusta, GA, for respondents.

CONNOR, Judge:

Catawba Insurance Company sought declaratory judgment concerning whether Kelvin Jermain Brown was a permissive user of an automobile insured by Nationwide when the car was involved in an accident. The trial court submitted the permissive use issue to the jury, who found Kelvin was driving the automobile with permission at the time. Therefore, the trial court held the Nationwide policy provided liability coverage and required Nationwide to reimburse Catawba for expenses it incurred defending Brown's estate. Nationwide appeals. We reverse and remand.

## FACTS

On October 30, 1994, Kelvin Brown ran into a telephone pole while driving a Toyota owned by his aunt, Linda Prince. Both Kelvin and his passenger, Thomas Lee Smith, Jr., were killed in the accident.

Kelvin's mother, Artricia Brown, had borrowed the car from her sister, Prince. She used the car almost every weekend because her car was not working. Although Kelvin had his own truck, he occasionally used Prince's car. He sometimes borrowed the car directly from Prince. When he did, he asked Prince for permission. Additionally, he used the car when it was in his mother's possession. Prince knew Kelvin sometimes drove the car when Brown borrowed it. She acknowledged Brown could allow Kelvin to use the car in Brown's discretion.

Brown placed the same restrictions on Kelvin's use of Prince's automobile she put on her own car. Because Kelvin had his own truck, he had to ask permission to use either her car or her sister's car. Brown allowed Kelvin to use the car to go to work, run errands, visit friends and attend Mason meetings. She did not allow him to use the car for joy riding

with friends, going to clubs, or staying out late at night. Brown also placed rules on Kelvin's use of his truck. She prohibited him from having too many people in the truck and from driving too late at night.

However, a friend of Kelvin's testified he rode with Kelvin in Prince's car about three times. He stated they would spend hours at a time in the car, riding around, listening to music, and going to the basketball court and store.

On the day of the accident, Kelvin drove Brown in his truck to her sister's house to pick up the car. Kelvin went out that evening in his truck. He returned home around eleven o'clock that night with a friend, presumably, Thomas Smith. Kelvin told his mother that she needed to go to bed. When she went to bed, Brown put the car keys on her mattress. After she went to sleep, Kelvin took the keys and left in the car. Kelvin did not ask permission to use the car. Kelvin and Thomas Smith were on their way to a dance in Greenwood when they wrecked.

Nationwide's liability policy covered Prince's car. Because Kelvin lived with his mother, Catawba insured him under her policy. Neither Brown nor her children lived with Prince.

Betty Smith, Thomas Lee Smith's personal representative, sued Brown. Nationwide denied liability coverage, claiming Kelvin was not driving the car with Prince's permission. Catawba tendered its policy limits in exchange for a covenant not to execute. Smith, however, refused the offer because of the potential coverage under the Nationwide policy.

Catawba brought this action against Nationwide, Brown, as personal representative of Kelvin's estate, and Smith, as personal representative of Thomas Smith's estate. Nationwide denied liability, asserting a counterclaim against Catawba and cross-claims against Brown and Smith.

As noted, the jury found Kelvin had implied permission to drive Prince's car at the time of the accident. The trial court denied Nationwide's motions for judgment notwithstanding the verdict and for a new trial. In a written order, the court found Nationwide provided primary liability coverage for the accident and consequently owed Brown a defense to Smith's civil action. The judge also awarded Catawba the expenses

resulting from Nationwide's refusal to provide a defense to Brown.

## DISCUSSION

Nationwide first argues the trial court erred in failing to grant its motion for judgment notwithstanding the verdict because the Respondents failed to establish Kelvin was operating Prince's automobile with her express or implied permission.

When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, we must consider the evidence in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993); *McGill v. University of South Carolina,* 310 S.C. 224, 423 S.E.2d 109 (1992). A directed verdict or judgment notwithstanding the verdict should not be granted unless only one reasonable inference can be drawn from the evidence. *Brady Dev. Co.,* 312 S.C. at 78, 439 S.E.2d at 269.

Catawba and Smith had the burden of establishing Kelvin was using Prince's car with permission. *See Liberty Mut. Ins. Co. v. Edwards,* 294 S.C. 368, 364 S.E.2d 750 (1988) (The burden is on the party seeking coverage to establish that permission was given by the named insured.). This permission could be either express or implied. *American Mut. Fire Ins. Co. v. Reliance Ins. Co.,* 268 S.C. 310, 233 S.E.2d 114 (1977). "[W]hether the permission be expressly granted or impliedly conferred, it must originate in the language or conduct of the named insured or of some one having authority to bind her in that respect." *Rakestraw v. Allstate Ins. Co.,* 238 S.C. 217, 223, 119 S.E.2d 746, 748 (1961).

Express consent "must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." 8 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 112:37 (3d ed.1997).

"Implied consent, as the term suggests, rests upon proof of circumstances from which an inference of actual permission or consent reasonably arises." *Cooper v. Firemen's Fund Ins. Co.,* 252 S.C. 629, 633, 167 S.E.2d 745, 747

(1969). "Implied consent involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Keeler v. Allstate Ins. Co.*, 261 S.C. 151, 155, 198 S.E.2d 793, 795 (1973). Consent must flow from the insured or from one authorized to act on the insured's behalf. *Southern Farm Bureau Cas. Ins. Co. v. Hartford Accident & Indem. Co.*, 255 S.C. 427, 179 S.E.2d 454 (1971).

Prince authorized Brown to allow Kelvin to use her automobile. Brown clearly required Kelvin to ask permission before he used the car. It is undisputed he did not ask permission on the night in question. Even though Kelvin had previously used the car without permission, this fact alone is not sufficient to infer implied permission. *See State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 S.C. 392, 179 S.E.2d 203 (1971) (insured's son's friend, who was involved in an accident while driving insured vehicle, did not have express or implied consent of the insured where insured specifically forbid his son from allowing anyone outside the insured's family to drive the vehicle and insured reprimanded son when he discovered son had allowed a friend to drive the vehicle on a prior occasion); *Cooper*, 252 S.C. at 633, 167 S.E.2d at 747 (Implied permission requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the name insured.); *State Auto. Mut. Ins. Co. v. Allstate Ins. Co.*, 298 S.C. 267, 379 S.E.2d 739 (Ct.App.1989) (no evidence to support finding that employee had implied permission to drive employer's truck at the time of the accident where employer did not verbally consent or acquiesce to employee's use of the truck and employer reprimanded employee on prior occasions when employee deviated from employer's rules concerning use of the truck); *see also Southern Farm Bureau Cas. Ins. Co.*, 255 S.C. at 433, 179 S.E.2d at 457 (Consent must run to the person who uses the insured vehicle as well as to the use he or she makes.); *Crenshaw v. Harleysville Mut. Cas. Co.*, 246 S.C. 549, 144 S.E.2d 810 (1965) (Permission to use a covered vehicle for a particular purpose does not imply permission to use it for all purposes.); *Eagle Fire Co. of New York v. Mullins*, 238

S.C. 272, 120 S.E.2d 1 (1961) (Consent should be considered as limited to the purpose for which it was given.); *Rakestraw*, 238 S.C. at 226, 119 S.E.2d at 750 (Permission must be expressly or impliedly given for the particular use being made of the insured vehicle at the time of the accident.); *cf. Holloman v. McAllister*, 289 S.C. 183, 345 S.E.2d 728 (1986) (insured's actual knowledge and acquiescence to third party's use constitutes implied permission).

Viewing the evidence in the light most favorable to Smith, we find insufficient evidence of implied consent for the trial court to have submitted the issue to the jury. Accordingly, we reverse and remand for judgment to be entered in favor of Nationwide.

**REVERSED AND REMANDED.**[1]

HOWELL, C.J., and GOOLSBY, J., concur.

---

1. Catawba accedes to Nationwide's position concerning Catawba's post-trial request for attorney's fees. Because the parties have settled this issue, we do not address it. Moreover, in light of our disposition, we need not address Nationwide's remaining issues.