PROGRESSIVE SPECIALTY INSURANCE CO.,
Plaintiff,

v.

Abraham MURRAY; Mark A. Gadsden; and Perry Capers, Defendants.

No. C/A 2:06–CV–00161–DC.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 26, 2007.

Jeffrey C. Kull, John Robert Murphy, Murphy and Grantland, Columbia, SC, for Plaintiff.

Anne L. Peterson–Hutto, Anne L. Peterson–Hutto Law Office, Charleston, SC, for Defendants.

## OPINION AND ORDER

NORTON, District Judge.

This matter is before the court on plaintiff's and defendant Perry Capers's cross-motions for summary judgment. Capers was injured while riding as a passenger in a vehicle insured by plaintiff. Plaintiff brought this declaratory judgment action to determine its coverage liability. The parties' motions raise issues of permissive use and uninsured motorist coverage.

## I. FACTS

Plaintiff insured a pickup truck owned by Hill Eskew. Eskew was a self-employed general contractor, doing home remodeling and other construction-related work around Kiawah Island, South Carolina. Eskew used the truck as part of his business, but maintained a personal insurance policy on the vehicle. In running his business, Eskew frequently hired Murray as a sub-contractor. Eskew occasionally allowed Murray to use the truck.

Eskew testified that he placed a number of restrictions on Murray's use of the truck, which he orally explained to Murray. Eskew stated he told Murray that he could not have any passengers and that the truck could be used only for work-related activities. He also testified that on the "rare" occasions when Murray had the truck, Eskew instructed Murray to drive "straight home and not to use it for per-sonal use." The instructions were not in writing, nor did Murray sign anything to indicate he understood them, but the evidence is uncontroverted that these restrictions were orally explained to Murray.

Murray's personal vehicle broke down the day before the accident. Eskew testified that Murray asked to borrow the truck for one night, and Eskew agreed to loan the truck to him. Eskew testified that he believed "Murray would drive home, return to work in the morning, use the truck for work on the date of the accident, and return it to Eskew's home after work that day." (Pl.Mot.Summ. J. 2.) Eskew also testified that Murray took the truck home that night without incident and used it for work the next day. At the end of the workday on the day of the accident, Murray drove back to Eskew's home and, as usual, Murray unloaded tools from the truck. Eskew stated he went inside the house, expecting Murray to park the vehicle and wait for a relative to pick him up. Instead, Murray left in the truck.

After Murray left, he went to his aunt's house on Johns Island, South Carolina. While there, Murray loaned the truck to Mark Gadsden, who used the truck to go to the store. Gadsden was not associated with Eskew's or Murray's business, and Eskew testified that he had never met him. Gadsden drove to the store and Capers rode with him as a passenger. There is some evidence that Murray consented to, or at least acquiesced in, Capers riding to the store as a passenger. (Capers Dep. Tr. 17.) At the store, Gadsden and Capers agreed to give one of Gadsden's friends a ride home. After dropping the friend off, Gadsden lost control of the truck and hit a tree, injuring Capers.

Gadsden fled the scene of the accident, leaving the injured Capers behind. Murray called Eskew later that night and told him that the truck had been stolen. How-

ever, Capers told the police that Gadsden was the driver.

The record consists of the police accident report, the deposition testimony of Hill Eskew, and the deposition testimony of Perry Capers. Eskew's testimony therefore provides the record's only evidence as to the permission and conditions pertaining to Murray's use of the truck.

Plaintiff filed this action seeking a declaratory judgment on its liability to pay for Capers's injuries. Plaintiff has moved for summary judgment, arguing that Murray exceeded the scope of his permissive use. Capers has moved for summary judgment, arguing that Murray acted within the scope of the permission granted by Eskew or, in the alternative, that Capers is entitled to benefits under the truck's uninsured motorist (UM) coverage.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a mere "scintilla" of evidence will not preclude summary judgment. *Id.* at 252, 106 S.Ct. 2505. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly ... find a verdict for the party" opposing summary judgment. *Id.* at 251, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Permissive Use

■ South Carolina law requires every automobile insurance policy to cover loss caused by an "insured." S.C.Code Ann. § 38–77–140 (2005). An "insured" includes the named insured, a resident spouse, resident relatives of either the named insured or spouse, permissive users, and guests in a vehicle to which the policy applies. *Id.* § 38–77–30(7). The party seeking to establish coverage through permissive use bears the burden of proving that the named insured gave permission. *Liberty Mut. Ins. Co. v. Edwards*, 294 S.C. 368, 371, 364 S.E.2d 750, 751 (1988) (citing *Allstate Ins. Co. v. Federated Mut. Implement & Hardware Ins. Co.*, 251 S.C. 203, 161 S.E.2d 240 (1968)).

■ Permissive use can result from either the express or implied permission of the named insured. S.C.Code Ann. § 38–77–30(7); *Catawba Ins. Co. v. Smith*, 336 S.C. 33, 37, 518 S.E.2d 291, 293 (Ct.App. 1999). Regardless of whether permission is express or implied, "it must originate in the language or conduct of the named insured or of some one having authority to bind [him] in that respect." *Rakestraw v. Allstate Ins. Co.*, 238 S.C. 217, 223, 119 S.E.2d 746, 748 (1961).

■ South Carolina adheres to the "conversion" or "strict construction" rule of permissive use, which mandates coverage only if the permittee acted strictly within the scope of the permission granted.

*State Farm Mut. Auto. Ins. Co. v. Logan,* 444 F.Supp.2d 622, 626 (D.S.C.2006); *U.S. Fire Ins. Co. v. Macloskie,* 320 S.C. 459, 465, 465 S.E.2d 759, 763 (Ct.App.1995). The conversion rule is the most stringent of the three possible standards that courts use for determining coverage in permissive use cases. *See U.S. Fire Ins.,* 320 S.C. at 465–66, 465 S.E.2d at 763. Even "minor deviations" from the scope of permission will result in no coverage under the conversion rule. *Id.*

### 1. Express Permission

"Express consent 'must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference.' " *Catawba Ins.,* 336 S.C. at 37, 518 S.E.2d at 293 (quoting 8 Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 112:37 (3d ed.1997)). There is not a genuine issue as to whether Eskew gave express permission. The only evidence in the record pertaining to the relationship between Eskew, the named insured, and any of the alleged permissive users is Eskew's deposition testimony. Eskew's testimony is uncontradicted that he did not give express permission for Murray to take the vehicle on the night of the accident, to have passengers, or to use it for personal activities. (Eskew Dep. Tr. 19–21.) Further, the record shows that Eskew had no communications or contact with Gadsden or Capers whatsoever. (Eskew Dep. Tr. 27; Capers Dep. Tr. 14.) Thus, there was no express permission in this case that would trigger coverage for Capers's injuries.

### 2. Implied Permission

■ Capers argues that Eskew's course of conduct during his relationship with Murray created a scope of permission wide enough to encompass the events that led to the accident. (Def.Mot.Summ. J. 6–7.) Plaintiff argues that Murray did not have implied permission to use the truck at the

time and, even if he did, that the scope of the permission did not encompass the events that led to Capers's injury. (Pl. Mot.Summ. J. 6–9.)

■ " 'Implied consent, as the term suggests, rests upon proof of circumstances from which an inference of actual permission or consent reasonably arises.' " *Catawba Ins.,* 336 S.C. at 38, 518 S.E.2d at 293 (quoting *Cooper v. Firemen's Fund Ins. Co.,* 252 S.C. 629, 633, 167 S.E.2d 745, 747 (1969)). "Implied consent involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Keeler v. Allstate Ins. Co.,* 261 S.C. 151, 155, 198 S.E.2d 793, 795 (1973). Implied consent does not arise simply because the named insured allowed another to use the vehicle on prior occasions. *See Catawba,* 336 S.C. at 38, 518 S.E.2d at 293–94. Permission to use a vehicle for a specific purpose does not imply permission to use the vehicle for all purposes. *Crenshaw v. Harleysville Mut. Cas. Co.,* 246 S.C. 549, 552, 144 S.E.2d 810, 812 (1965). Finally, the consent required for implied permission "must flow from the insured or one authorized to act on his behalf." *S. Farm Bureau Cas. Ins. Co. v. Hartford Accident & Indem. Co.,* 255 S.C. 427, 434, 179 S.E.2d 454, 457 (1971).

To demonstrate coverage, Capers must first establish that he was a "permissive user" or "guest" as defined in S.C.Code Ann. § 38–77–30(7). The evidence supports an inference that Murray may have given Capers permission to ride as a passenger. (Capers Dep. Tr. 17.) As plaintiff correctly notes, this requires Capers to prove that Murray was acting within the scope of permission given by Eskew in allowing Capers to ride in the vehicle.

The record does not support an inference that the use here was within any

implied permission established by Eskew. The uncontradicted evidence is that Eskew expressly instructed Murray that the vehicle was not to be used for personal reasons, that no passengers were permitted to ride in the truck with him, and that he was only to drive the truck "straight home."(Eskew Dep. Tr. 19–21.) All of the evidence indicates, without contradiction, that the vehicle was not being used for work-related activities when the accident occurred, that a passenger was riding in the vehicle, and that Murray deviated from Eskew's instructions. (Capers Dep. Tr. 17.) Certainly implied permission cannot arise when the use of the vehicle is directly contrary to the named insured's express instructions.

Capers argues that Murray had implied permission to do these things by virtue of the relationship between Murray and Eskew and Eskew's course of conduct vis-a-vis the truck. Capers cites a South Carolina Supreme Court case for the proposition that "'where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured.'" *Am. Mut. Fire Ins. Co. v. Reliance Ins. Co.*, 268 S.C. 310, 233 S.E.2d 114 (1977) (quoting *Baesler v. Globe Indem. Co.*, 33 N.J. 148, 162 A.2d 854, 857 (1960)). However, that case involved a father who allowed his son to use a car at all times for an indefinite period and placed *no* restrictions on the son's use. *Id.* at 317, 233 S.E.2d at 118 (stating that the son's use of the vehicle "was about as unrestricted and unfettered as it could possibly be"). The evidence in this case supports only the inference that Murray's use when the accident occurred was restricted and limited in both time and scope-thereby making *American Mutual* inapposite to this case.

Finally, Capers argues that Eskew's acquiescence in Murray's use of the vehicle the night of the accident created the requisite permission. The standard in scope of permission cases is that "implied consent involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Keeler v. Allstate Ins. Co.*, 261 S.C. 151, 155, 198 S.E.2d 793, 795 (1973). There may be a genuine issue if Murray, for example, took the vehicle that night and was himself involved in an accident. However, the undisputed evidence is that regardless of when Murray used Eskew's truck, there were conditions or limitations on that use. In particular, the record is undisputed that Eskew issued clear, verbal instructions to Murray that the vehicle was to be used only for work-related activities and no passengers were ever permitted to ride in the truck. (Eskew Dep. Tr. 19–21.) Even if one assumes Murray was acting within the scope of Eskew's implied permission by taking the truck that night, it is illogical to assume the limitations that had always applied to Murray's use of the truck were no longer applicable.

In conclusion, the record does not contain evidence demonstrating a genuine issue as to whether Murray was acting within the scope of permission in his use of the truck (especially in light of the strict construction standard employed in South Carolina), thereby precluding Murray from making Gadsden or Capers permissive users.

### B. Uninsured Motorist Coverage

■ Capers alternatively argues that if the use was outside the scope of permission, then the vehicle became uninsured and Capers can then recover under the vehicle's UM coverage. (Def.Mot.Summ. J. 8.) Plaintiff argues that Capers does not

qualify as an insured such that he can receive UM benefits. (Pl.Resp.Mot.Summ. J. 9–10.)

The South Carolina Supreme Court has held that if an insurer successfully denies liability coverage (e.g., the use was outside the scope of permission), then the vehicle becomes an uninsured motor vehicle. *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 367, 529 S.E.2d 280, 282 (2000). In those circumstances, any "insured" who is injured by the uninsured motorist can receive UM benefits. *Id.* at 368, 529 S.E.2d at 283; *see* S.C.Code Ann. § 38–77–150 (2006). Thus, the question in this case is whether Capers was an "insured" as defined in S.C.Code Ann. § 38–77–30(7).[1]

As discussed above, Capers was not a "permissive user" because there is no evidence that the named insured, Eskew, gave him permission to be in the vehicle. Capers testified that he had no such permission from Eskew. (*See* Capers Dep. Tr. 18.) Capers therefore must show that he was a "guest" to obtain UM benefits. It is undisputed that Capers was not a guest of the named insured. Instead, Capers argues he should receive UM benefits because he expected to be insured when he rode in the vehicle.[2]

Whether Capers qualifies as a "guest" under the statute is a difficult question because the South Carolina courts have never expressly defined that term. To resolve this issue, the court must look to the South Carolina Supreme Court's opinion in *Schmidt*. *Schmidt* involved a father who permitted his daughter to drive his car to a party, giving her "strict instructions" that nobody else was allowed to drive the vehicle. *Schmidt*, 339 S.C. at 364, 529 S.E.2d at 281. The father also allowed Hurst, his daughter's friend, to ride as a passenger in the car. *See id.* Sometime after arriving at the party, Schmidt, who was hosting the party, drove off in the car with Hurst as a passenger. *Id.* Schmidt drove the car into a tree and injured Hurst. *Id.* The insurer "successfully denied liability coverage due to the non-permissive use by Schmidt." *Id.* Hurst then sought to recover under the car's UM coverage, arguing that she was an "insured" and that the car was an "uninsured motor vehicle" under section 38–77–30(7). *Id.* at 365, 529 S.E.2d at 281.

First, the supreme court held that Hurst was an "insured" as used in section 38–77–30(7) because her use of the vehicle (even though only as a passenger and not as a driver) "was at all time consensual." Second, the supreme court also held the car, although the only vehicle in the accident, was nonetheless was "uninsured motor vehicle" for purposes of UM coverage. *Id.* at 367–68, 529 S.E.2d at 282–83. The car became uninsured because it was driven by an uninsured motorist (because Schmidt was a non-permissive user) who then injured a insured. *See id.* at 368, 529 S.E.2d at 283. The supreme court thus concluded that Hurst was entitled to benefits under the car's UM benefits. *Id.* at 364, 529 S.E.2d at 281.

The supreme court did not give a detailed explanation of whose consent was

---

1. "Insured" is defined as "the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies." S.C.Code Ann. § 38–77–30(7) (2005).

2. Counsel may be deriving this standard from the general policy behind requiring UM coverage. However, demonstrating that the injured simply expected to be covered is not the standard for determining whether coverage exists. *See Schmidt*, 339 S.C. at 366–67, 529 S.E.2d at 282–83.

required to make Hurst an insured. The defendant stipulated that Hurst was a "guest and/or permissive occupant and/or permissive user" of the vehicle. *Schmidt,* 339 S.C. at 366, 529 S.E.2d at 282. The supreme court went on to do its own brief analysis on this point and agreed with the defendant's stipulation, but focused on whether the policy applied to the vehicle and whether riding as a passenger constitutes "using" the vehicle. *See id.* at 366–67, 529 S.E.2d at 282. *Schmidt* thus provides little guidance on when a passenger qualifies as a guest, except to say that a passenger who rides with the consent of the named insured is a guest. *Schmidt* does not directly address the issue presented here: whether and when a passenger who rides without the consent of the named insured can be a guest.

The supreme court stated in *Schmidt* that "[t]he purpose of uninsured motorist law is 'to provide benefits and protection against the peril of injury or death by an insured motorist, his family, and the permissive users of his vehicle.'" *Schmidt,* 339 S.C. at 368, 529 S.E.2d at 283 (quoting *Ferguson v. State Farm Mut. Auto. Ins. Co.,* 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973)). *Schmidt* and the uninsured motorist statute do not provide that anyone injured by an uninsured motorist while in a covered vehicle is entitled to UM benefits. Instead, the statute mandates a case-by-case approach that looks at the rela-

tionships among the parties involved to determine whether the person seeking benefits was an insured. *See Laird v. Nationwide Ins. Co.,* 243 S.C. 388, ——, 134 S.E.2d 206, 208–09 (1964).

The key fact in *Schmidt* was that Hurst rode as a passenger with the consent of the named insured—thereby making Hurst either a permissive user or a guest. Hurst, in the supreme court's analysis, *was not* an insured because she was a guest of the non-permissive user. *See Schmidt,* 339 S.C. at 366–67, 529 S.E.2d at 282. In this case, Capers can make an argument, at most, that he rode in the truck with Murray's consent. Murray, though, was a non-permissive user vis-a-vis allowing Capers to ride as a passenger because Murray acted outside the scope of permission both in disobeying the named insured's instruction not to transport passengers and more generally by using the truck for personal activities.

Taken to its logical conclusion, allowing non-permissive users to have guests who could then recover UM benefits could produce absurd results. For example, a car thief, who is simply a non-permissive user for insurance law purposes,[3] could steal a car and allow an unknowing guest to ride with him. If the vehicle were then involved in a single-car accident, that guest could recover UM benefits.[4] Uninsured motorist coverage exists to protect named insureds and their associates from uninsured motorists. It makes little sense

3.  *See Schmidt,* 339 S.C. at 368, 529 S.E.2d at 280.

4.  The supreme court used a similar hypothetical in support of requiring coverage in the *Schmidt* case. The court stated that permitting insureds to recover UM benefits in single-car accidents is necessary because there could be a situation in which a person who is *otherwise insured* is the victim of a carjacking. *Schmidt,* 339 S.C. at 368, 529 S.E.2d at 283. Because the carjacker is a non-permissive user, the car would therefore be uninsured.

Allowing an insured to receive UM benefits in that situation is supported by the general policy behind UM coverage: to protect insureds against the acts of uninsured motorists (i.e., a carjacker). The policyholder in that situation has a clear interest in protecting the vehicle's occupant. That hypothetical could likewise be used to prevent coverage if the victim is not a named insured but rather a non-permissive user or a non-permissive user's guest (such as the carjacker himself or his accomplice), both of whom the policyholder has little interest in protecting.

based on the policy behind UM coverage to require the insurer to compensate injuries incurred by persons the policyholder has no interest in protecting. In this case, Eskew had no interest in having his UM insurance policy protect Capers, who at best was a guest of Murray, who was then a non-permissive user.

## IV. CONCLUSION

For the reasons stated above, it is therefore **ORDERED** the plaintiff's motion for summary judgment is **GRANTED** and defendant Perry Capers's motion for summary judgment is **DENIED**.

**AND IT IS SO ORDERED.**