663 S.E.2d 484

**AUTO OWNERS INSURANCE COMPANY, Huckaby and Associates and Wright Auto Sales, Respondents,**

v.

**Lance ROLLISON, Appellant.**

**No. 26512.**

Supreme Court of South Carolina.

Heard Feb. 7, 2008.

Decided June 30, 2008.

Rehearing Denied Aug. 8, 2008.

James B. Richardson, Jr., of Columbia and Mark Reagan Calhoun, of Calhoun Law Firm, of Lexington, for Appellant.

Henry H. Taylor, of Taylor Law Firm, of West Columbia, John T. Lay, Jr. and A. Johnston Cox, both of Ellis, Lawhorne & Sims, of Columbia, for Respondents.

Justice BEATTY.

In this declaratory judgment action, Lance Rollison, who was injured as a passenger in a vehicle insured by Auto Owners Insurance Company (Auto Owners), appeals the circuit court's order finding he was not entitled to uninsured motorist coverage because he was not a "guest" in the insured vehicle. This Court granted the Court of Appeals' motion for the appeal to be certified directly to this Court. We reverse the decision of the circuit court.

## FACTUAL/PROCEDURAL HISTORY

On the night of January 6, 2001, fifteen-year-old David Reed was involved in a single-vehicle accident while driving a Plymouth Laser owned by his grandfather, James L. Wright d/b/a Wright's Auto Sales. Rollison, Reed's fifteen-year-old friend and passenger in the vehicle, was injured in the accident. The vehicle involved in the accident was insured by Auto Owners under a Commercial General Liability Policy that included a Garage Liability Coverage Form and a Dealers' Blanket Coverage Form.

Rollison brought suit against Reed, Wright, and Wright's Auto Sales to recover for injuries sustained in the accident. Auto Owners filed a declaratory judgment action seeking a determination that neither policy provided coverage. In its Complaint, Auto Owners alleged that Wright's policies did not provide coverage because, at the time of the accident, Reed: (1) was not a permissive user of the vehicle or a resident of Wright's home; and (2) was not using the vehicle for purposes associated with Wright's Auto Sales. Additionally, Auto Owners contended the policies did not provide underinsured or uninsured motorist coverage to Rollison because he was not a permissive user or guest in the vehicle at the time of the accident. In response, Rollison filed a counterclaim seeking liability coverage, or in the alternative, uninsured motorist coverage under the Garage Liability policy.

The circuit court judge conducted a nonjury trial. The trial and deposition testimony established that at the time of the accident Reed did not have permission to drive Wright's vehicle nor was he a resident relative of Wright. Wright testified that at the time of the accident Reed lived alone in a camper located on the premises of the auto sales business. Although Reed had unlimited access to the business office where the vehicle keys were stored, Wright claimed he did not give Reed permission to drive any of the vehicles off the sales lot. In terms of the vehicle involved in the accident, Wright testified he intended to give Reed the vehicle for his birthday when he received an unrestricted driver's license. Wright, however, never gave Reed permission to drive the vehicle on a public road. In fact, Wright stated he told the police officers at the scene of the accident that the vehicle had been taken without his permission. Wright further testified he was unaware that Reed had previously driven vehicles off the lot before the time of the accident. Had he known, Wright stated he would have "tried [his] best to stop" it.

Reed confirmed his grandfather's testimony. Reed testified his grandfather did not know before the date of the accident that he had driven vehicles off the sales lot. According to Reed, he had driven two of the vehicles off the sales lot on at least ten occasions. However, he always drove the vehicles at night so that his grandfather did not witness what he was doing. Reed acknowledged that his grandfather never gave him permission to drive the vehicle that was involved in the accident.

In contrast, Rollison testified he witnessed Reed drive five to ten different vehicles on at least thirty occasions. He further testified that Reed's grandfather was often present when Reed drove off and returned to the sales lot. Rollison assumed Reed had permission to drive the vehicle that was involved in the accident because Reed told him that his grandfather had given him the vehicle. Additionally, Rollison testified that Reed had the keys to the vehicle and had never been reprimanded by his grandfather for driving off the sales lot.

Two teenage friends of Rollison corroborated his testimony. Michael J. Kinney testified that on at least five occasions he

had been a passenger in a vehicle that Reed drove off the sales lot in the presence of his grandfather. Kinney believed Reed had permission to drive the vehicles because he had the keys and had never been reprimanded by his grandfather for driving. However, he admitted there were times when Reed avoided returning the vehicle at night when his grandfather was still present at the sales lot. Kinney testified that Reed would "circle around" until his grandfather left the dealership for the evening. Because of this behavior, Kinney conceded he was under the impression that Reed did not have permission to drive the vehicle at night.

H. Patrick Hodge, III, gave a similar account to that of Kinney. Hodge testified that Reed "always had keys to the [Plymouth] Laser" and that the vehicle was a gift from Reed's grandfather. Hodge claimed he had seen Reed drive "numerous" vehicles. On several occasions, Hodge witnessed Reed drive these vehicles off the sales lot in the presence of his grandfather. Like Kinney, Hodge also observed that when returning a vehicle at night Reed often would circle the auto sales lot and enter it only after his grandfather was no longer at the business. Kinney interpreted Reed's behavior to mean that he had permission to drive but just not at night.

Based on this evidence and the terms of the insurance policies, the circuit court ruled the Commercial General Liability Policy did not provide coverage for the accident as a matter of law because the policy contained an exclusion for bodily injury arising out of the use of the automobile. Additionally, the court found the Garage Liability policy did not provide coverage because Reed did not have Wright's express or implied permission to drive the vehicle on the night of the accident. Therefore, the court held Reed did not qualify as an "insured" pursuant to section 38–77–30(7) [1] of the South Carolina Code or the terms of the policy.

---

1. Section 38–77–30(7) provides:

Insured means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

Because Reed was not a permissive user of Wright's vehicle at the time of the accident, the court found the vehicle would be deemed uninsured pursuant to this Court's holding in *Unisun Insurance Company v. Schmidt*, 339 S.C. 362, 529 S.E.2d 280 (2000). The court, however, concluded that Rollison was not entitled to uninsured motorist benefits under the Garage Liability policy because he was not a permissive guest in the vehicle at the time of the accident. In reaching this decision, the court reasoned that Rollison could not be a "guest" within the meaning of section 38–77–30(7) of the South Carolina Code without the named insured's permission.

Rollison only appeals the portion of the circuit court's order regarding his status as a "guest" for purposes of uninsured motorist coverage.

## DISCUSSION

Rollison argues the circuit court erred in finding that he was precluded from receiving uninsured motorist coverage from the Garage Liability policy issued by Auto Owners to Wright's Auto Sales. He contends he was a "guest" in the vehicle to which the policy applied. Specifically, he asserts that a passenger is not required to use the vehicle or have the named insured's permission in order to qualify as a "guest" under the terms of section 38–77–30(7). For reasons that will be more fully discussed, we agree that Rollison was a guest at the time of the accident.

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law. *Estate of Revis v. Revis*, 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct.App.1997). This case primarily involves the interpretation of statutes, which are questions of law. *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). Thus, because this action involves the interpretation of a contract and statutes, it is an

action at law. *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 146, 538 S.E.2d 672, 675 (Ct.App.2000). In an action at law tried without a jury, "our scope of review extends merely to the correction of errors of law." *Id.* Therefore, this Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

As recognized by the circuit court judge in his order, this Court's case of *Unisun* provides guidance for a determination of whether a passenger in a vehicle may recover uninsured motorist benefits under the vehicle owner's policy. *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 529 S.E.2d 280 (2000). In *Unisun*, January O'Neale was given a BMW by her father with instructions not to let anyone else drive the vehicle. One night, O'Neale and her friend Jennifer Hurst drove to a party at Christopher Schmidt's house. During the course of the party, Schmidt drove off in the BMW with Hurst as a passenger. Schmidt was involved in a single-vehicle accident which resulted in Hurst being injured. As stipulated by the parties, Schmidt's use of the vehicle was not consensual, but Hurst's use was at all times consensual. *Id.* at 364–65, 529 S.E.2d at 281. State Farm, the insurance carrier for the BMW, successfully denied liability coverage as a result of Schmidt's nonpermissive use of the vehicle. Hurst sought uninsured motorist coverage, claiming the denial of liability coverage by State Farm rendered the BMW an uninsured motor vehicle. Because she was a permissive occupant, guest, or user of the BMW at the time of the accident, Hurst asserted she was covered under State Farm's uninsured motorist policy and the uninsured motor vehicle insurance statutes. *Id.* at 365, 529 S.E.2d at 281. The circuit court agreed with Hurst, holding that she could make an uninsured motorist claim against the State Farm policy which insured the BMW. *Id.*

On appeal, the Court of Appeals reversed on the ground that "Hurst was not an insured, because '[w]hen Schmidt drove off in the BMW without permission, the BMW was no longer a motor vehicle *to which the policy applied.*'" *Id.* at 365, 529 S.E.2d at 281 (quoting *Unisun Ins. Co. v. Schmidt*, 331 S.C. 437, 442, 503 S.E.2d 211, 214 (Ct.App.1998)).

Hurst petitioned for and was granted certiorari by this Court. We reversed the Court of Appeals' decision. In doing so, we analyzed the following questions: (1) was Hurst an "insured" within the meaning of section 38–77–30(7) of the South Carolina Code; and (2) was the BMW an uninsured motor vehicle?

This Court answered the first question in the affirmative based on several grounds. As our primary basis, we noted that "Respondent's concession that Hurst was a 'guest and/or permissive occupant and/or permissive user' of the vehicle places Hurst squarely within the statutory definition of 'insured.' " *Unisun,* 339 S.C. at 366, 529 S.E.2d at 282. However, even without the Respondent's concession, this Court found that Hurst fell within the definition of "insured" under the uninsured motorist statute and the insurance policy given the BMW was a vehicle "to which the policy applied," and Hurst's "use" of the vehicle was at all times consensual. *Id.*

In terms of the second question, we found the BMW was "an uninsured motor vehicle based on the plain language of the statute and public policy." *Id.* at 367, 529 S.E.2d at 282. Because State Farm successfully denied liability coverage, the Court concluded that the BMW fell within section 38–77–30(14) of the South Carolina Code, the uninsured motorist law.[2] Additionally, we found this decision was consistent with the purpose of the uninsured motorist law, which is " 'to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle.' " *Id.* at 368, 529 S.E.2d at 283 (quoting *Ferguson v. State Farm Mut. Auto. Ins. Co.,* 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973)).

We believe our analysis in *Unisun* is instructive in the instant case in that it establishes: (1) what constitutes an uninsured motor vehicle when an insurer successfully denies

---

2. Section 38–77–30(14) defines "uninsured motor vehicle" to mean a vehicle as to which:

(a) there is not bodily injury liability insurance and property damage liability insurance both at least in the amounts specified in Section 38–77–140, or

(b) there is nominally that insurance, but the insurer writing the same successfully denies coverage thereunder. . . .

S.C.Code Ann. § 38–77–30(14) (2002).

liability coverage; and (2) that a passenger who rides with the consent of the named insured is a "guest." However, *Unisun* is not dispositive given the significant factual difference between the two cases. In *Unisun*, the insurance carrier conceded that Hurst was a guest or permissive user of the vehicle. Here, Auto Owners specifically asserts that Rollison was neither a permissive user nor guest in the vehicle at the time of the accident.

The factual scenario presented in this appeal requires this Court to extend the holding in *Unisun* and answer the question of whether Rollison qualified as a "guest" under section 38–77–30(7). In analyzing this issue, we are guided by the general rules of statutory construction.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst·v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). The court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation. *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 469, 636 S.E.2d 598, 607 (2006). "We will reject a statutory interpretation when to accept it would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention." *Unisun*, 339 S.C. at 368, 529 S.E.2d at 283.

The specific statute at issue, the uninsured motorist statute, is remedial in nature. *Unisun*, 339 S.C. at 366, 529 S.E.2d at 282. "A statute remedial in nature should be liberally construed in order to accomplish the object sought." *Inabinet v. Royal Exchange Assur. of London*, 165 S.C. 33, 36, 162 S.E. 599, 600 (1932).

With these principles in mind, we turn to the language of section 38–77–30(7). Under this section, an "insured" is defined as: (1) the named insured while in the motor vehicle or otherwise; (2) the named insured's resident relatives, specifi-

cally his or her spouse, while in the motor vehicle or otherwise; (3) any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies; *and (4) a guest in the motor vehicle to which the policy applies* or the personal representative of any of the above-listed. S.C.Code Ann. § 38–77–30(7) (2002); *see Davidson v. E. Fire & Cas. Ins. Co.,* 245 S.C. 472, 477, 141 S.E.2d 135, 138 (1965) (interpreting section 46–750.11(2) of the South Carolina Code, the precursor to section 38–77–30(7), and defining the following two classes of insureds: (1) the named insured, his spouse and his or her relatives resident in the same household, while in the vehicle or otherwise; and (2) any person using, with the consent of the named insured, the motor vehicle to which the policy applies *and* a guest in such motor vehicle to which the policy applies).

A review of the plain language of the statute reveals that "guest" is listed independently as a person who constitutes an "insured." As we interpret the statute, a person in the fourth category of "insured" need only have the status of a "guest" to qualify as an "insured." In comparison, for a person to constitute an "insured" under the third category, he or she must use the vehicle and have the express or implied consent of the named insured. *See Davidson,* 245 S.C. at 477–78, 141 S.E.2d at 138 (stating "[t]he members of the second [class] . . . the permissive user *and* the guest, are covered while using, or a guest in, the motor vehicle to which the policy applies, i.e., the motor vehicle designated in the policy") (emphasis added). Because the Legislature did not include the consent language when it listed "guest" in the statute, we do not believe it intended to require a "guest" to obtain the consent of the named insured in order to be eligible for uninsured motorist coverage.

Notably, courts from other jurisdictions interpreting similar statutory language have reached the same conclusion. *See, e.g., Beard v. Nunes,* 269 Ga.App. 214, 603 S.E.2d 735, 737 (2004) (applying Ga.Code Ann. § 33–7–11(b)(1)(B) and stating "[t]he second category [of 'insureds'] consists of 'any person who uses, with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies; a guest in such motor vehicle to which the policy applies' "); *Nationwide Mut. Ins. Co. v. Silverman,* 332 N.C. 633, 423 S.E.2d 68,

71 (1992) (applying N.C. Gen.Stat. § 20–279.21(b)(3) and stating "[t]he second class of insured persons is referred to as 'Class II' insureds and includes any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle;" finding injured party was a "Class II" insured given she was "merely a guest in one of the covered vehicles").

Additionally, we believe our interpretation not only effectuates the intention of the Legislature but is also consistent with the general definition of a guest:

> Generally speaking, a guest is one who takes a ride in a car driven by another person, merely for his or her own pleasure or on his or her own business, and without making any return or conferring any benefit on the operator thereof. A guest is a person who is carried in an automobile gratuitously, that is, one who gives no compensation for the carriage.

60A C.J.S. *Motor Vehicles* § 805 (2002 & Supp.2008); *see Owens v. Gresham*, 258 S.C. 46, 50, 186 S.E.2d 816, 818 (1972) (" 'A person riding in a motor vehicle is a guest if his transportation confers a benefit only upon himself and no benefit upon the owner or operator except such as is incident to hospitality, social relations, companionship, or the like as a mere gratuity.' " (quoting 8 Am.Jur.2d *Automobiles and Highway Traffic*, § 475)).

Based on the foregoing, one who is a "guest" at the invitation of the driver has, by implication, the consent of the named insured. Presumptively then, a guest has the consent of the named insured unless he or she has knowledge to the contrary. Logically, because the named insured would rarely be present in a situation as in the facts of this case, a passenger can only rely on the driver's representations regarding his status as a permissive user. Thus, a determination of whether a passenger qualifies as a "guest" under the statute must be viewed from the passenger's perspective.[3]

---

3. Illustrative of this point is our comment in *Unisun* that Hurst, even without the concession of the parties that she was a "guest," would have fallen "within the definition of 'insured' under both the statute and the policy." *Unisun*, 339 S.C. at 366, 529 S.E.2d at 282. Thus, an

■ We believe that to define "guest" otherwise would lead to an absurd result which would require a passenger to specifically inquire whether the driver either owned the vehicle or had permission from the named insured to drive the vehicle. Clearly, such an interpretation would be contrary to the intention of the Legislature as well as the remedial purpose and inclusive nature of the uninsured motorist statute. *See Ferguson v. State Farm Mut. Auto. Ins. Co.*, 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973) ("The public policy declared by our uninsured motorist statute imposes an obligation on insurers to provide protection to their insureds against loss caused by wrongful conduct of an uninsured motorist."). However, we emphasize that whether one is a mere passenger or a "guest" for purposes of determining an "insured" is largely dependent upon the facts and circumstances of each case, particularly the relationships among the involved parties. *See Owens*, 258 S.C. at 51, 186 S.E.2d at 818 ("Whether one is a passenger or a guest depends largely upon the facts and circumstances of each particular case.").

■ Turning to the facts of the instant case, we hold the circuit court erred in finding that Rollison was not entitled to uninsured motorist coverage. Applying *Unisun*, it is clear the vehicle involved in the accident was an uninsured vehicle given Auto Owners successfully denied liability coverage. The question then becomes whether Rollison was an "insured" at the time of the accident pursuant to section 38–77–30(7). As previously discussed, the only possible category that Rollison could come within is category four, a "guest." Based on the specific facts of this case, we conclude that Rollison was a "guest." [4]

---

invited passenger of a non-permissive driver may, but not necessarily, qualify as a "guest" for the purposes of uninsured motorist coverage.

4. Recently, our United States District Court reached a different conclusion when it considered *Unisun* and analyzed a question similar to the instant case. *Progressive Specialty Ins. Co. v. Murray*, 472 F.Supp.2d 732 (D.S.C.2007). The holding in that case is neither controlling nor dispositive. The District Court specifically noted that the question of whether someone qualifies as a " 'guest' under the statute is a difficult question because the South Carolina courts have never expressly defined that term." *Id.* at 738.

■ On the day of the accident, Reed drove to Rollison's home during daylight hours and invited him to drive to another friend's home. Based on Reed's invitation, Rollison by implication had the consent of Wright, the named insured. Furthermore, there is no evidence that Rollison had reason to know that Reed was not a permissive user of Wright's vehicle. On multiple occasions Rollison witnessed Reed drive off Wright's sales lot. Rollison also believed that Reed had permission to drive the vehicle because he had possession of the keys to the vehicle, a supposed gift from Wright, and had never been reprimanded by Wright for driving off the sales lot. Because Rollison was a "guest" and, thus, an "insured" for the purposes of uninsured motorist coverage, we reverse the decision of the circuit court.[5]

**REVERSED.[6]**

---

5. Auto Owners asserts that to allow Rollison to recover uninsured motorist benefits is contrary to the language of the policy at issue. We find this issue to be without merit given the statute is controlling if the terms of the policy excluding coverage are in conflict with the requirements of the statute. See *Hogan v. Home Ins. Co.*, 260 S.C. 157, 160, 194 S.E.2d 890, 891 (1973) ("If the provision excluding coverage is in conflict with the requirements of the statute, of course, the statute controls the rights of the parties.").

6. With all due respect, in our view to concur in the conclusion reached by the dissent would require an assumption of a holding in *Unisun* that is not evident in the opinion itself. Moreover, it would require the abandonment of a long-held position in our jurisprudence that the uninsured motorist statute is remedial in nature and should be liberally construed. See *Unisun*, 339 S.C. at 366, 529 S.E.2d at 282 (recognizing the uninsured motorist statute is remedial in nature); *Inabinet*, 165 S.C. at 36, 162 S.E. at 600 ("A statute remedial in nature should be liberally construed in order to accomplish the object sought.").

Although the dissent's analysis may be "consistent" with our decision in *Unisun*, it is clearly not the same. The dissent posits "passengers who were not 'invited' by one of these persons-the named insured, her resident relatives, permissive users-are not guests and are therefore not insureds." That is not the holding in *Unisun*. In *Unisun*, unlike here, the guest status of the plaintiff was uncontested and the Court was not required to define "guest." Instead, the Court focused its analysis on permissive/consensual use of the vehicle by the injured party versus non-permissive use of the driver.

In our view, the *Unisun* Court could have ended its analysis when it was determined that Hurst, the injured party, was a guest. As previously discussed, section 38-77-30(7) does not in any way condition the

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent and would affirm the circuit court's order finding Rollison was not a guest within the coverage of the Auto Owners' policy.

I agree with the majority that our decision in this case rests on our interpretation of "insured" found in S.C.Code Ann. § 38–77–30(7)(2002) [7]:

> "Insured" means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

As I read the statute, "insured" means the named insured and resident relatives, persons using the car with the consent of the named insured, and their guests. While I agree that a guest need not obtain the consent of the named insured to be covered by the policy, in my view, whether a passenger is a "guest insured" is dependent on the status of the person "inviting" him. The statute unequivocally provides that all passengers of the named insured and her resident relatives are "guest insureds," as are passengers invited by permissive users. On the other hand, passengers who were not "invited" by one of these persons-the named insured, her resident relatives, permissive users are not guests and are therefore not insureds. This analysis is consistent with our decision in *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 529 S.E.2d 280 (2000). In *Unisun*, it was the status of the injured passenger

---

status of guest. The statute clearly includes "a guest in the motor vehicle to which the policy applies" as an insured.

The *Unisun* Court clearly wanted to specifically deal with the Court of Appeals' pronouncement that a non-permissive driver negates uninsured coverage for otherwise permissive/consensual passengers.

7. Unlike the majority, I am not persuaded that the interpretation of this term in § 38–77–30(7) is impacted by the remedial nature of the uninsured motorist statute, S.C.Code Ann. § 38–77–150.

as an "invitee" of both the named insured and the permissive user which made her a "guest" and thus an insured. Since Rollison was invited by a driver who did not have permission, I agree with the trial court that he is not a "guest insured" under the statute and therefore not entitled to recover under the policy.

I do not agree that the status of a passenger should be determined from his perspective, and furthermore do not agree with the majority's holding that there is a presumption that a passenger invited by the driver has been invited with the named insured's consent.[8] If the Court determines to create this test and this presumption, then in my opinion the case must be remanded for a hearing on this specific factual inquiry.

I would affirm the circuit court order.

---

8. One need only think of the implications where the driver of a stolen vehicle invites passengers to ride along, and they are subsequently involved in a serious accident.