683 S.E.2d 792

**SUPER DUPER INC., dba Super Duper Publications, Plaintiff,**

**v.**

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, The Travelers Indemnity Company of America, and Travelers Property Casualty Company of America, Defendants.**

**No. 26717.**

Supreme Court of South Carolina.

Heard May 12, 2009.

Decided Sept. 14, 2009.

---

b. materials, parts or equipment furnished in connection with such work or operations.

202

Esten B. Leinster, III, of Greenville, and Eugene Clark Covington, Jr., of Covington, Patrick, Hagins, Stern & Lewis, of Greenville, for Plaintiff.

Heather M. Hughes, Laura A. Brady, and William T. Corbert Jr., of Drinker Biddle & Reath, of Florham Park, New Jersey; M. Dawes Cooke, Jr. and John W. Fletcher, of Barnwell, Whaley, Patterson & Helms, of Charleston; Timothy A. Domin and Christina R. Fargnoli, both of Clawon & Staubes, of Charleston, for Defendant.

Justice KITTREDGE.

The United States District Court for the District of South Carolina presents certified questions concerning commercial general liability (CGL) insurance policies. We are asked, as an issue of first impression in South Carolina, whether the respective policies' inclusion of an advertising injury may encompass trademark infringement. Generally, based on the policy terms before us, we answer in the affirmative. We are not asked nor do we attempt to offer an opinion on the ultimate issues of coverage in this case. The ultimate questions of coverage remain with the federal district court.

## I.

Super Duper, Inc., a South Carolina corporation, manufactures education and therapy materials for children. Mattel, Inc., an international toy manufacturer, challenged Super Duper's registration of four trademarks and filed formal notices of opposition and petitions for cancellation with the United States Patent and Trademark Office. Super Duper brought a declaratory judgment action in the federal district court to determine if its trademark infringed on Mattel's trademarks. Mattel counterclaimed asserting trademark infringement along with other claims.

Super Duper was insured by Travelers Indemnity Company of America and Travelers Property Casualty Company of America (collectively "Travelers") and Pennsylvania National Mutual Casualty Insurance Company ("Penn National") under commercial general liability insurance policies for "advertising injury." Super Duper notified Travelers and Penn National

about the trademark infringement counterclaims and requested coverage. Travelers and Penn National denied coverage and refused to provide Super Duper a defense. Thus, Super Duper defended itself. Subsequently, Mattel prevailed on its trademark infringement claims.

Super Duper brought this action in the federal district court seeking a declaratory judgment and damages for failure to defend or indemnify, breach of contract, and bad faith.

## A.

This case involves three CGL policies provided by Travelers: 1999 policy (effective from August 26, 1999 through August 26, 2000), 2000 policy (effective from August 26, 2000 through August 26, 2001), and 2005 policy (effective from August 26, 2005 through August 26, 2006). The 1999 and 2000 CGL policies include the following definition:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. *Misappropriation of advertising ideas or style of doing business;* or

d. *Infringement of copyright, title or slogan.*

(emphasis added).[1] The 2005 policy redefined "advertising injury" as arising out of one or more of the following offenses:

a. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

---

1. This policy definition is the verbatim language provided by the Insurance Services Office (ISO) for commercial general liability (CGL) policies in 1986. 6 J. THOMAS McCARTHY, McCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 33:5 (4th ed. 2009).

b. Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

c. *Infringement of copyright, title or slogan,* provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

(emphasis added).[2]

Effective from August 26, 2005 to August 26, 2006, Travelers provided a Commercial Excess Liability Umbrella (CUP) insurance policy for Super Duper. This policy also included "[i]nfringement of copyright, title or slogan" in its definition of "advertising injury."

We turn next to the Penn National CGL policies, which were in effect August 26, 2001 through August 26, 2002 (referred to as "2001 policy") and August 26, 2002 through August 26, 2003 (referred to as "2002 policy"). The 2002 policy was renewed for consecutive one-year terms, ending on August 26, 2006. Unlike the Traveler policies, the relevant Penn National Policies (2001 policy and 2002 policy) defined "advertisement." The 2001 Penn National policy stated, " '[a]dvertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."[3] The 2002 Penn National policy mirrored the precedent policy only adding references about the Internet and websites.

---

**2.** Travelers apparently did not insure Super Duper in the interim between the 2000 and 2005 policies. Travelers used a CGL policy during this non-coverage time which included an exclusion stating:

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

As Travelers conceded at oral argument, this exclusion has no application in the case at hand as the 2005 CGL policy deleted this exclusion in its entirety.

**3.** The "advertisement" definition follows the 1998 standard language by ISO for CGL policies. 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 33:5 (4th ed. 2009).

The 2001 and 2002 Penn National policies also included definitions for "personal and advertising injury":

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

. . .

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".[4]

The 2002 Penn National CGL policy also included the following exclusion:

"Personal and advertising injury" arising out' of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

### B.

Quoting portions of the above Penn National and Travelers policies, the federal court certified the following questions in the indemnification action, which this Court accepted:

1. Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury arising out of the offense of "misappropriation of advertising ideas or style of doing business?"

2. Whether an underlying suit premised upon alleged trademark infringement by the insured qualifies as injury arising out of the offense of "infringement of copyright, title or slogan?"

3. Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury arising out of the offense of "use of another's advertising idea in your 'advertisement?' "

---

4. Other items in the definition differed slightly among the two policies, but subsections f and g are identical. These subsections are also identical to language provided by the ISO for CGL policies in 1998. 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 33:5 (4th ed. 2009).

4. Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury arising out of the offense of "infringing [upon] another's copyright, trade dress or slogan in your 'advertisement?' "[5]

## II.

Although the federal district court quoted language from the Travelers and Penn National policies in the certified questions posed to this Court, the federal court did not seek our determination on the ultimate coverage questions, and we offer no such opinion today. Moreover, we neither reach the insurers' challenge to the pleadings in the federal district court, nor do we reach the express exclusion in Penn National's 2002 policy.

We now turn to the first two certified questions as they implicate Super Duper's policies with Travelers.

## A.

Question 1: Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury arising out of the offense of "misappropriation of advertising ideas or style of doing business?"

In *State Auto Property & Casualty Insurance Co. v. Travelers Indemnity Co. of America,* 343 F.3d 249, 255–58 (4th Cir.2003), the federal court of appeals interpreted the same contract language applying North Carolina law. We find the *State Auto* opinion well-reasoned and sound, drawing on basic contract interpretation law to which South Carolina also adheres.[6] Today, we adopt its analysis regarding whether trademark infringement constitutes an advertising injury.

---

**5.** We note the second certified question uses the term "alleged trademark infringement." The remaining three questions make no such qualification.

**6.** *Compare Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008) ("An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law."), *and Superior Auto. Ins. Co. v. Maners,* 261 S.C. 257, 263, 199 S.E.2d 719, 722 (1973) ("[T]o ascertain the intention of an instrument resort is first to be had to its language, and if such is perfectly plain and capable of legal construction, such

*State Auto* began by recognizing the phrase "misappropriation of advertising ideas or style of doing business" presents two distinct questions: "(1) whether 'misappropriation' under the Travelers Policy is limited to common law misappropriation, or whether it encompasses any claim related to the wrongful use of a trademark; and (2) whether a trademark can constitute an advertising idea or a style of doing business." *State Auto*, 343 F.3d at 255.

The court in *State Auto* rejected Travelers' contention the undefined term misappropriation refers to the common law tort of misappropriation [7] for a multitude of reasons: (1) North Carolina's refusal to limit a similar phrase, "unfair competition," to its common law meaning when interpreting the phrase in an insurance policy; (2) the majority of courts interpreting "misappropriation" apply a general meaning, not the common law meaning; and (3) an ambiguity must be resolved in the policyholder's favor. 343 F.3d at 255–57.

We too reject Travelers' contention the undefined term misappropriation refers to the common law tort of misappropriation as the insurance policy makes no such limitation and instead uses the general term misappropriation, to which we apply its common meaning. *See Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003)

---

language determines the force and effect of the instrument."), *and Forner v. Butler*, 319 S.C. 275, 277, 460 S.E.2d 425, 427 (Ct.App.1995) ("Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. Furthermore, exclusions in an insurance policy are to be construed most strongly against the insurer.") (citation omitted), *with State Auto*, 343 F.3d at 254 ("An insurance policy is a contract, and its provisions govern the rights and duties of the parties thereto.... Further, provisions in a policy 'which extend coverage to the insured must be construed liberally so as to afford coverage whenever possible by reasonable construction.'") (citations omitted).

7. The common law tort of misappropriation is defined as, "[a] judge-made common law form of unfair competition where the defendant has copied or appropriated some item or creation of the plaintiff which is not protected by either patent law, copyright law, trademark law, or any other traditional theory of exclusive rights." J. THOMAS McCARTHY, McCARTHY'S DESK ENCYCLOPEDIA OF INTELLECTUAL PROPERTY 273 (2d ed. 1995). Trademark infringement would fall outside the common law tort of misappropriation definition; however, Travelers' reliance on the common law tort is improperly restrictive.

("When a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense."). Generally, misappropriate is "to appropriate dishonestly for one's own use ... [or] to appropriate wrongly or misapply in use." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1442 (2002). Trademark infringement is squarely within this definition.

■ Even if we were to find uncertainty with the common understanding of the term misappropriation, we would be left with an ambiguity and thus the same result. Ambiguous terms must be construed in favor of the insured. *Greenville County v. Ins. Reserve Fund,* 313 S.C. 546, 547–48, 443 S.E.2d 552, 553 (1994). If Travelers intended to restrict its exposure solely to the common law tort of misappropriation, then Travelers had both the means and the responsibility to use restrictive language in the contract instead of the general term "misappropriation."

Next, we turn to part two of question one: whether a trademark can qualify as an advertising idea or a style of doing business. *State Auto* began its analysis by listing four functions a trademark serves:

(1) it identifies and distinguishes a seller's goods; (2) it indicates that all goods bearing the mark derive from the same source; (3) it signifies that all goods bearing the mark are of the same quality; and (4) it serves as a prime instrument in the advertisement and sale of the seller's goods.

*State Auto,* 343 F.3d at 257–58 (citing 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3:2 (4th ed. 2003)). As a trademark is the prime advertising instrument, we adopt *State Auto*'s holding, "at the very least, a trademark has the potential to be an advertising idea." *State Auto,* 343 F.3d at 258. As we do not reach the ultimate coverage issue, we end our analysis here with our recognition a trademark has the potential to constitute an advertising idea or a style of doing business.

Therefore, we join the majority of courts finding misappropriation may include trademark infringement. *See Cat Internet Servs., Inc. v. Providence Washington Ins. Co.,* 333 F.3d 138, 142 (3rd Cir.2003) ("We now hold that when a complaint

alleges that an insured misappropriates and uses trademarks or ideas in connection with marketing and sales and for the purpose of gaining customers, the conduct constitutes 'misappropriation of an advertising idea or style of doing business' under Pennsylvania law."), *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.,* 193 F.3d 742, 749 (3rd Cir.1999) ("A trademark depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising, and therefore allegations of trademark infringement arguably allege misappropriation of an advertising idea."), *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.,* 165 F.Supp.2d 1332, 1339 (S.D.Fla.2001) ("This court therefore concludes that allegations of trademark or trade dress infringement meet the CGL 'advertising injury' definition of 'advertising injury' under the definition sub-part for 'misappropriation of advertising ideas or style of doing business.' "). *But see Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.,* 99 F.3d 795, 802 (6th Cir.1996) ("[T]his court concludes, contrary to the district court's conclusion, that 'misappropriation of advertising ideas or style of doing business' does not refer to a category or grouping of actionable conduct which includes trademark or trade dress infringement.").

In sum, we hold misappropriation may encompass a claim related to the wrongful use of a trademark, and a trademark may constitute an advertising idea or a style of doing business. Accordingly, to the first certified question, we answer yes.

### B.

Question 2: Whether an underlying suit premised upon alleged trademark infringement by the insured qualifies as injury arising out of the offense of "infringement of copyright, title or slogan?"

 The 1999 and 2000 Travelers policies defined an advertising injury as "[i]nfringement of copyright, title or slogan." The 2005 Travelers policy redefined "advertising injury" as "[i]nfringement of copyright, title or slogan, provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such copyright, title or slogan."

Again, the policy failed to define these terms, and we therefore must look to their common meanings. Super Duper conceded at oral argument it made no allegations pertaining to copyright; thus, we shall examine the terms title and slogan. A title is "a descriptive name." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2400 (2002). A slogan is "a brief striking phrase used in advertising or promotion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2145 (2002). Therefore, trademarks, titles, and slogans are heavily related and can be synonymous. Thus, coverage for "infringement of copyright, title or slogan" may envelop trademark infringement. *See Union Ins. Co. v. Knife Co., Inc.*, 897 F.Supp. 1213, 1217 (W.D.Ark.1995) (holding trademark infringement can be described as infringement of a title or slogan as "both titles and slogans ... can undoubtedly be protected as trademarks"). Accordingly, we answer the second certified question yes.

## III.

Now, we reach Penn National's policies, as certified questions three and four solely implicate this insurer. The quoted language in certified questions three and four appears in Penn National's 2001 and 2002 CGL policies, which state:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The Penn National policies defined "advertisement" as, "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The Travelers policies include no such definition of "advertisement."

## A.

Question 3: Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury

arising out of the offense of "use of another's advertising idea in your 'advertisement?' "

 The third certified question asks whether trademark infringement may occur when another's advertising idea is used. "An 'advertising idea' is an 'idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.'" *Ohio Cas. Ins. Co. v. Cloud Nine, LLC,* 464 F.Supp.2d 1161, 1166 (D.Utah 2006) (quoting *Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.,* 191 Wis.2d 229, 528 N.W.2d 486, 490 (Wis.Ct.App. 1995)). As discussed *supra,* there is a close link between advertising and trademarks. This connection exists under Penn National's definition of an advertisement as "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." A trademark is "any 'word, name, symbol, or device' used by a manufacturer or merchant 'to identify his goods and distinguish them from those manufactured by others.'" 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 3:4 (4th ed. 2009) (quoting Lanham Act § 45, 15 U.S.C.A. § 1127 (Supp. 2009)).

Thus, the use of another's advertising idea may include trademark infringement because to infringe upon someone's trademark, which is an advertising device, one improperly uses another's advertising idea to draw the consumer's attention to a product. Accordingly, we answer the third certified question, yes.

**B.**

Question 4: Whether an underlying suit premised upon trademark infringement by the insured qualifies as injury arising out of the offense of "infringing [upon] another's copyright, trade dress or slogan in your 'advertisement?'"

 In the fourth certified question, this Court must determine whether trademark infringement occurs when a party improperly uses another's copyright, trade dress or slogan in their advertisement. Again, the definition of copyright is not pertinent to this case, so we turn to trade dress and slogan. As discussed *supra,* a slogan is "a brief striking phrase used in

advertising or promotion." WEBSTER'S THIRD NEW INTERNATION-AL DICTIONARY 2145 (2002). Accordingly, we hold a trademark may be a product's slogan. Therefore, trademark infringement potentially relates to the improper use of another's slogan.

Trade dress is a more amorphous concept. Historically trade dress included a product's labels and containers; now trade dress refers to the product's packaging, the product's shape and design, and the totality of elements creating the product's overall image. 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.4 (4th ed. 2009). Further, McCarthy stated, "the history of American law throughout much of the Twentieth Century is the gradual disappearance of distinctions between the law of 'trade dress' and that of 'trademarks.'" 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.1 (4th ed. 2009). Therefore, a trademark may serve as an element to the overall trade dress of a product.

Accordingly, we answer the fourth certified question yes, as trademark infringement may occur when a party infringes upon another's trade dress or slogan in its advertisement.

## IV.

In answering these certified questions, we make no judgments regarding the overall coverage issues in this case. We answer the certified questions narrowly and conclude, based on the policies presented, trademark infringement has the potential to constitute an advertising injury. This potential is all we find today. We recognize this case requires more analysis, procedurally and substantively, to resolve the parties' disputes.

**CERTIFIED QUESTIONS ANSWERED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.