730 S.E.2d 887

CASON COMPANIES, INC., Respondent,

v.

Joseph GORRIN and Sharon Gorrin, Appellants.

No. 4986.

Court of Appeals of South Carolina.

Heard April 11, 2012.

Decided June 13, 2012.

Rehearing Denied July 19, 2012.

Kimila L. Wooten, of Elmore Goldsmith, P.A., of Greenville, for Appellants.

David Alan Wilson, of Horton, Drawdy, Ward, Mullinax, & Farry, P.A., of Greenville, for Respondent.

GEATHERS, J.

Appellants Joseph and Sharon Gorrin (Purchasers) contend the circuit court erred in denying their motion for a directed verdict, pursuant to section 37–2–413 of the South Carolina Code (2002), and, thereafter, in awarding attorney's fees, costs, and expenses of $59,855.31 to Respondent Cason Companies, Inc. (Seller).  We affirm.

## FACTS

Purchasers ordered 35,000 bricks from Seller to use in the construction of their new home. Thereafter, Seller denied credit to Purchasers' general contractor. As a result, Purchasers executed a Personal Credit Application Form and requested credit of $5,000 for the purpose of buying bricks, mortar, and sand from Seller.

Seller's Personal Credit Application Form stated that if Seller approved Purchasers' Credit Application, Seller retained "the right not to extend credit to Purchaser at any time, particularly if the account is not paid in full each month." Regarding Purchasers' payment obligations and Seller's collection rights upon Purchasers' default, the Credit Application specified that [1] payment was due in full within thirty days of Seller's invoice; [2] should payment in full not be made within thirty days, the account would be in default and would accrue finance charges; and [3] if Seller was required to exercise collection efforts, Purchasers were responsible for paying all of Seller's attorney's fees, costs, and expenses. The Credit Application stated:

> ■ Purchaser hereby agrees and promises to pay [Seller] for all services and materials purchased from [Seller], now or in the future, on this account. Purchaser understands that payments are due in full within thirty (30) days of the date of [Seller's] invoice. [2] Should payments not be made within thirty (30) days, the account will be considered past-due and in default, and shall accrue finance charges of 18% per annum from the first day the account is past due, until payment is made in full. Purchaser agrees to pay these finance charges. [3] Purchaser also agrees to pay all [Seller's] attorney[']s fees, costs[,] and expenses. Each of the undersigned [Purchasers] agrees to pay court costs, and all other costs of collection allowed by law.

Purchasers also signed a "Guaranty Agreement," in which they agreed: "In the event this account is placed in the hands of an attorney or attorneys for collection or suit instituted to collect some or any portion thereof, I, and/or we agree and promise to pay all [Seller's] attorneys' fees, costs[,] and expenses."

Seller approved Purchasers' Credit Application and extended a $5,000 "line of credit" to Purchasers. From August 2005 through February 2006, Seller delivered bricks, sand, and mortar to Purchasers' construction site. Seller sent Purchasers an invoice following each delivery; however, Purchasers failed to make payment. On February 25, 2006, Seller sent Purchasers an invoice showing a balance due of $23,780.80, of which $13,685.09 was more than ninety days past due. Purchasers told Seller that they would pay their account in full at closing.

On March 20, 2006, Purchasers closed on the loan for their new home; however, they made no payment to Seller. Moreover, Purchasers attested on their title insurance application: "There are no unpaid bills or claims for labor or services performed or material furnished or delivered during the last twelve months for alterations, repair work, or new construction on the above-described property."

On January 25, 2007, Seller filed an action seeking payment of Purchasers' account, plus interest, attorney's fees, costs, and expenses. In June 2010, following a four-day trial, the jury awarded Seller actual damages of $49,856.46, which included the balance due on Purchasers' account and finance charges. Seller then moved for attorney's fees, costs, and expenses, pursuant to the terms of Purchasers' Credit Application. Seller additionally filed an affidavit of attorney's fees, expenses, and costs. Purchasers moved for a directed verdict on the issue of attorney's fees, claiming their agreement with Seller established a consumer credit sale, pursuant to section 37-2-104 of the South Carolina Code (2002). As a result, Purchasers contended the attorney's fees provisions of the Credit Application and Guaranty Agreement were void *ab initio*, pursuant to section 37-2-413(1) of the South Carolina Code (2002), which limits attorney's fees with respect to consumer credit sales and consumer leases.

On September 15, 2010, the circuit court issued an order denying Purchasers' motion for a directed verdict and awarded Seller attorney's fees of $51,560, and expenses and costs of $8,295.31, for a total award of $59,855.31. This appeal followed.

## LAW/ANALYSIS

First, Purchasers contend that each of their transactions is properly classified as a "consumer credit sale," as defined in section 37–2–104 of the South Carolina Code (2002). Next, because section 37–2–413(1) of the South Carolina Code (2002) limits attorney's fees related to consumer credit sales and consumer leases, Purchasers maintain the provisions regarding attorney's fees in the Credit Application and Guaranty Agreement were "void *ab initio*." The circuit court concluded that the Credit Application did not establish a consumer credit sale, and, therefore, section 37–2–413 did not apply. We agree.

A "consumer credit sale" is defined as:

[A] sale of goods, services, or an interest in land in which

(a) Credit is granted by a person who regularly engages as a seller in credit transactions of the same kind,

(b) The buyer is a person other than an organization,

(c) The goods, services, or interest in land are purchased primarily for a personal, family or household purpose,

(d) Either the debt is payable in installments or a credit service charge is made, and

(e) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars.

S.C.Code Ann. § 37–2–104(1) (2002).

"The court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation." *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 609, 663 S.E.2d 484, 488 (2008). Purchasers' argument for establishing a consumer credit sale transaction fails with the analysis of § 37–2–104(1)(d)—payment of debt. In a consumer credit sale, "either the debt is payable [1] in installments or [2] a credit service charge is made." S.C.Code Ann. § 37–2–104(1)(d) (2002). Seller asserts that its Credit Application authorized neither method of debt payment. The circuit court found that the "credit service charge," as defined in section 37–2–104(1)(d), was not equivalent to the payment of finance charges precipitated by default, as required by the Credit Application. Furthermore, because the outstanding debt was required to be paid *in full* within

thirty days of Seller's invoice, the circuit court found the debt was not eligible to be paid "in installments."

We compared the definition of a "credit service charge," under the South Carolina Consumer Protection Code, with the express terms of the Credit Application. We agree with the circuit court's determination that the parties' transactions cannot be classified as consumer credit sales, as contemplated by section 37–2–104 of the South Carolina Code (2002). The Consumer Protection Code defines a "credit service charge" as follows:

> "Credit service charge" means the sum of (1) *all charges payable directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to the extension of credit,* including any of the following types of charges which are applicable: time price differential, service, carrying or other charge, however denominated, premium or other charge for any guarantee or insurance protecting the seller against the buyer's default or other credit loss; and, except as otherwise provided in this section, (2) charges incurred for investigating the collateral or creditworthiness of the buyer or for commissions or brokerage for obtaining the credit, irrespective of the person to whom the charges are paid or payable, unless the seller had no notice of the charges when the credit was granted. *The term does not include charges as a result of default, additional charges (§ 37–2–202), delinquency charges (§ 37–2–203),* deferral charges (§ 37–2–204), or in a consumer credit sale which is secured in whole or in part by a first or junior lien or real estate, charges incurred for appraising the real estate that is collateral for the credit sale, if not paid to the creditor or a person related to the creditor.

S.C. Ann.Code § 37–2–109 (2002) (emphases added). The applicable provision of the Credit Application states:

> Purchaser hereby agrees and promises to pay [Seller] for all services and materials purchased from [Seller], now or in the future, on this account. *Purchaser understands that payments are due in full within thirty (30) days of the date of [Seller's] invoice.* Should payments not be made within thirty (30) days, *the account shall be considered past due and in default,* and shall accrue finance charges of 18% per

annum from the first day the account is past due until payment is made in full.

(emphases added).

Based upon the comparison between the language of section 37–2–109, defining a credit service charge, and the Credit Application, which provides for additional charges *upon Purchasers' default*, we find that the finance charges imposed by the Credit Application do not constitute a credit service charge. In conclusion, the Credit Application did not establish a method of payment of debt that involved either installment payments or credit service charges; rather, upon Purchasers' default, the Credit Application provided for the accrual of finance charges. *See Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994) (citation omitted) ("When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect."). Here, the plain language of the Credit Application and Guaranty Agreement requires Purchasers to pay Seller's attorney's fees, costs, and expenses. Accordingly, we affirm the circuit court's determination that the parties' agreement did not meet the test of a consumer credit sale, and Purchasers are bound by the terms of the agreements they executed.[1]

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

PIEPER and KONDUROS, JJ., concur.

---

1. On appeal, Purchasers contend "there was no evidence that the [attorney's] fees were incurred." Seller contends this issue was raised for the first time in Purchasers' brief to the Court of Appeals, and, therefore, it is not preserved for appellate review. We agree. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (citation omitted) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").